IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| JANET HUCKABEE, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:22-cv-00126 |
| | § | |
| | § | JURY DEMANDED |
| | § | |
| MCWANE, INC. | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff Janet Huckabee hereby files this, her Original Complaint, against Defendant McWane, Inc. dba Tyler Pipe for violating federal law. The causes of action and summary of claims relating thereto are addressed below:

**I.  PARTIES, JURISDICTION AND VENUE**

1. Plaintiff Janet Huckabee ("Plaintiff" or "Huckabee") is currently a citizen and resident of Tyler, Texas.

2. Defendant, McWane, Inc. is a foreign corporation licensed to do business in the state of Texas doing business as Tyler Pipe Industries with its principal place of business at Highway 69 North, Tyler, Smith County, Texas.  Defendant may be served by delivering a copy of this petition to its registered agent for service, CT Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.

3. This court has jurisdiction to hear the merits of Plaintiff's claims under 28 U.S.C. §§1331 as Plaintiff is claiming violations of the Americans with Disabilities Act, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act and Chapter 21 of the Texas

Labor Code.

4. Venue exists in this district and division as detailed in 28 U.S.C. §1391.

5. Most of the acts alleged herein occurred in Smith County, Texas.

## II.    FACTUAL BACKGROUND

6. Plaintiff was employed by Tyler Pipe from August 21, 1978, until she resigned because of the harassment and demotion she received. The last 4 years with Tyler Pipe, Plaintiff was employed in the position of supervisor.

7. On January 14, 2021, Plaintiff was informed by her manager Bart Howlett that she was being removed as supervising people. Plaintiff asked if the move was motivated by poor job performance and his reply was "you did a good job, but this move is better for the department."

8. A week later Plaintiff was placed at the front desk by Howlett. Plaintiff told Howlett that the job was stressful, but that she would try. Howlett responded with "Why don't you Retire?" Plaintiff responded with "I can't retire right now." Howlett then lashed out at Plaintiff stating: "if you can't do this [job], then you need to go see Faye Pettigrew (HR Manager)." Plaintiff insisted that she never said she couldn't do the job, only that she would try. Howlett again lashed out at Plaintiff over the same issue.

9. After this incident, Plaintiff went to her car shaking and experienced what she believed was a mental break down. Plaintiff then called her psychiatrist and asked if he would take her off work for 1 week, which he did. Plaintiff's primary care doctor Storrs filled out an FMLA form and sent it to Faye Pettigrew in HR. Dr. Storrs took Plaintiff off work on January 14, 2021, and returning on January 25, 2021, or until she was clinically improved.

10. Plaintiff missed about 5 weeks off and on from the end of January until around the end of February. When Plaintiff returned to work around March 10, 2021, she was summoned to the HR office to see Faye Pettigrew. Plaintiff was asked by Lance Lyle where she was going and

Plaintiff told him she was called to see Faye. Lyle responded that "he was told to watch you [Plaintiff] and to know where you are going."

11. When Plaintiff got to the HR office, Pettigrew told her that her behavior "is not good." Pettigrew did say "I kept your money the same. Bart [Howlett] wanted to pay you what the job pays." This was a reference to the fact that Plaintiff had been demoted from her supervisor position.

12. Howlett had told Plaintiff that her pay would remain the same so Corporate wouldn't ask questions why she was drawing supervisor pay and not working as a supervisor.

13. On April 12, Plaintiff was told by Howlett to meet him at the HR office. In the meeting Plaintiff was given a poor job performance, note in the job to which she was only recently assigned. Plaintiff asked for a leave of absence and was denied.

14. Plaintiff worked about another week and the job conditions just kept getting worse. Howlett changed Plaintiff's work hours from 7:00 am - 6:30 pm to 6:00 am - 3:00 pm with no set lunch break. Then later in the week he changed her hours to 5:30 am to 3:00pm with the same lunch requirements.

15. After the poor job performance note, Plaintiff talked with Faye Pettigrew (HR), and she asked Plaintiff about retiring. Pettigrew said that Plaintiff had 3 weeks to do better which was by April 30, 2021. Plaintiff asked if there was a severance package if she retired and Pettigrew said no. Plaintiff didn't want to be terminated after 42 years working so she retired on April 23, 2021.

### III.   CAUSES OF ACTION

#### A.
#### AMERICANS WITH DISABILITIES ACT
#### CHAPTER 21 – TEXAS LABOR CODE

16. The allegations contained in previous paragraphs are hereby incorporated by reference.

17. As a result of her medical conditions described herein, Plaintiff has been an individual with a "disability" within the meaning of Section 3(2) of the Americans with Disabilities Act, 42 U.S.C. § 12102(2). More particularly, Plaintiff had impairments that substantially limits one or more of her major life activities, has a record of such an impairment, and/or was regarded by Defendants as having such an impairment.

18. Plaintiff is a "qualified individual with a disability" as that term is defined in § 101(8) of the ADA, 42 U.S.C. § 12111(8). More specifically, Plaintiff is an individual with a disability who, with reasonable accommodation, can perform the essential functions of her job as supervisor or shipping clerk.

19. The effect of these unlawful practices has been to deprive Plaintiff of equal employment opportunities, and to otherwise adversely affect her employment status as an individual with a disability within the meaning of the ADA. Based upon the stated allegations, Plaintiff asserts three claims under the ADA: (1) Disparate treatment based upon Defendant's termination of Plaintiff based upon qualification standards and other criteria that screened her out as an individual with disabilities; (2) failure to make reasonable accommodation to Plaintiff's disabilities, which constitutes discrimination against Plaintiff with respect to terms, conditions, or privileges of employment in violation of Section 102(b)(5)(A) of the ADA, 42 U.S.C. § 12112(b)(5)(A) and (3) regarding Plaintiff as disabled. In connection with Plaintiff's accommodation claim, Defendant failed to undertake any good faith efforts, in consultation with Plaintiff, to identify and make any reasonable accommodation with Plaintiff.

### B.
### AGE DISCRIMINATION IN EMPLOYMENT ACT
### CHAPTER 21 – TEXAS LABOR CODE

20. Plaintiff realleges and incorporates the allegations contained in all previous paragraphs as if fully stated herein.

21. Plaintiff has satisfied all jurisdictional prerequisites in connection with her claim under the Age Discrimination in Employment Act and Chapter 21 of the Texas Labor Code.

22. Defendant is an "employer" as defined by the ADEA and Chapter 21 of the Texas Labor Code.

23. At all relevant times Plaintiff was over the age of 40; thus, she was in a protected category as defined by the ADEA and Chapter 21 of the Texas Labor Code.

24. Plaintiff was terminated because of age discrimination.

25. As described above, Defendant intentionally and willfully violated the ADEA and Chapter 21 of the Texas Labor Code by discriminating against Plaintiff because of her opposition to age discrimination.

### C.
### TITLE VII - GENDER DISCRIMINATION
### CHAPTER 21 – TEXAS LABOR CODE

26. Plaintiff incorporates each of the foregoing paragraphs as if fully set forth herein.

27. Plaintiff is informed and believes and therefore alleges that Defendant replaced her in the position which she formerly held with Defendant with a male employee.

28. The termination of Plaintiff by Defendant was because of Plaintiff's gender, which violates 42 U.S.C §2000e, et seq. and Chapter 21 of the Texas Labor Code and therefore entitles Plaintiff to relief under the provisions thereof.

29. At all times relevant hereto, Defendant has enacted and effected policies and practices of unlawful and systematic gender discrimination against Plaintiff by *inter alia*:

    (a) Failing to equalize conditions of employment for Plaintiff as contrasted with comparably trained and qualified male employees; and,

    (b) Adopting unreasonable, unwarranted and arbitrary standards and,

(c) conditions of employment and advancement designed to discriminate against Plaintiff in favor of male employees.

30. The termination of Plaintiff's employment by Defendant was a malicious violation of Title VII and Chapter 21 of the Texas Labor Code and as such entitles Plaintiff to recover punitive damages.

31. Finally, Defendant retaliated against Plaintiff for asserting her rights under the Title VII in violation of 42 U.S.C. §2000e-3(a) and Chapter 21 of the Texas Labor Code.

## IV.   DAMAGES

32. As a result of Defendant's violations of the law described herein, Plaintiff has suffered actual damages in the form of lost wages and benefits (past and future), in an amount that has not yet been fully established, but which will be provided at time of trial. Additionally, Plaintiff has suffered mental and emotional distress in the past and will likely suffer such damages in the future which entitle her to recover compensatory damages.

33. By reason of the malicious conduct described herein, Plaintiff is also entitled to recover punitive damages in an amount to be determined by the trier of fact.

34. As a result of this willful violation of the ADEA, Plaintiff requests that she be awarded all damages, to which she is entitled, as outlined in 29 U.S.C. § 2617, including, but not limited to, lost wages, salary, employee benefits, and any other compensation denied or lost as a result of the violation, plus interest. In addition, Plaintiff requests liquidated damages equal to the amount of reimbursable compensation described above. Plaintiff also requests any additional equitable relief to which she is entitled.

35. Plaintiff also requests reasonable attorney's fees and court costs.

## V.     JURY DEMAND

36.   Plaintiff requests trial by jury on all claims for which a jury trial is available.

## VI.     PRAYER FOR RELIEF

37.   Wherefore, Plaintiff requests that Defendant be cited to appear and answer, and

   a.   Judgment against Defendant for Plaintiff's actual damages, including lost wages and benefits (both back pay and front pay) and compensatory damages in an amount to be determined;

   b.   Judgment against Defendant for punitive damages for the maximum amount allowed by law;

   c.   Judgment against Defendant for liquidated damages;

   d.   An order that Defendant take such other and further actions as may be necessary to redress Defendants' violations of the law;

   e.   Pre-judgment and post-judgment interest at the maximum amount allowed by law;

   f.   Costs of suit, including attorney's fees;

   g.   The award of such other and further relief, both at law and in equity, including injunctive relief and reinstatement, to which Plaintiff may be justly entitled.

Respectfully submitted,

/s/ *William S. Hommel, Jr.*
William S. Hommel, Jr.
State Bar No. 09934250
Hommel Law Firm PC
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
903-596-7100 Telephone and Facsimile

ATTORNEY FOR PLAINTIFF